**EXHIBIT A**

**SUPERIOR COURT OF WASHINGTON**
**COUNTY OF KING**

| | |
|---|---|
| SUSAN PADDEN, a single woman | |
| Plaintiff, | NO. _____ |
| vs. | |
| CITY OF DES MOINES, a Washington Municipal Corporation, AND MICHAEL MATTHIAS, | COMPLAINT FOR DAMAGES & JURY DEMAND |
| Defendants. | |

COMES NOW the Plaintiff by and through her attorneys of record, Patricia Bosmans,

Law Office of P. Bosmans, and Eric Krening, Law Office of Eric Krening and alleges as follows:

## I.    <u>PARTIES</u>

1.1    Plaintiff Susan Padden (hereinafter "Ms. Padden") is a single, adult woman, and a resident

of Pierce County.

1.2    Defendant City of Des Moines (hereinafter "City") is a municipal corporation in King

County, Washington, and defendant Michael Matthias is the City Manager for the City of

Des Moines and a resident of Des Moines, Washington. References to the Defendant are,

for the most part, specific references to Defendant Michael Matthias.

COMPLAINT FOR DAMAGES &
JURY DEMAND ~ Page  1 OF 25

**THE LAW OFFICE OF**
**P. BOSMANS**
1067 25ᵀᴴ St. PL. SE
PUYALLUP, WA 98372
_____
PBOSMANS_Law@OUTLOOK.COM

## II.   JURISDICTION & VENUE

2.1   This Court has jurisdiction to review this matter, and venue is proper in this Court pursuant to RCW 4.12.020 and 4.92.010.

2.2   The cause of action at issue in this Complaint occurred in the City of Des Moines, King County.

2.3   The Claim for Damages was served on the Defendants on February 21. 2020.

## III.   JURY DEMAND

3.1   Ms. Padden hereby demands a trial by jury.

## IV.   STATEMENT OF FACTS

4.1   **Ms. Sue Padden**

    4.1.1   Ms. Padden served as Senior Services Manager in the City of Des Moines Parks, Recreation and Senior Services Department for 22 years and served on the Des Moines Legacy Foundation Board (hereinafter "DMLF") for 19 years.

    4.1.2   Ms. Padden has a bachelor's degree in science of health, physical education, and leisure sciences from Oklahoma State University.

    4.1.3   Ms. Padden has completed a 44-year career in the field of municipal parks, recreation and senior services.

    4.1.4   Ms. Padden announced in January of 2018 her decision to retire on June 29, 2018. Because of her notice, the City could plan for the succession of services at the Des Moines Senior Center.

    4.1.5   Ms. Padden was aware of an incident that occurred at the June 7, 2018 Board Meeting of DMLF during which Des Moines city employees asserted a right to

COMPLAINT FOR DAMAGES &
JURY DEMAND ~ Page  2 OF 25

THE LAW OFFICE OF
P. BOSMANS
1067 25TH ST. PL. SE
PUYALLUP, WA 98372

PBOSMANS_LAW@OUTLOOK.COM

attend any and all meetings of the DMLF and to take possession of the DMLF files.

4.1.6   Ms. Padden was not aware of any ongoing investigation or audit of DMLF.

4.1.7   Prior to June 14, 2018, Ms. Padden was not aware of any ongoing investigation or audit of herself.  She did not take any actions on those dates based on any such investigations.

4.1.8   On June 5, 2002, then-City Manager Anthony Piasecki required Ms. Padden to serve on the DMLF Board of Directors as part of her job duties. (Ex. A).

4.1.9   Ms. Padden was the DMLF Board member who maintained DMLF records in a designated drawer at the Senior Center, and who maintained DMLF supplies and materials at other City facilities.

4.1.10  Ms. Padden had maintained the DMLF records openly with permission from City managers such as the Director of Parks, Recreation and Senior Services for 19 years.

4.1.11  Ms. Padden was not merely an ex officio member of the DMLF Board, but was instead, a full member with all fiduciary obligations of a Board member.

4.1.12  Absent direction otherwise, a reasonable person in the shoes of Ms. Padden would conclude that the City and Defendant did not find the Board role to be a conflict of interest for Ms. Padden.

4.1.13  Ms. Padden in fact did conclude that the City and Defendant did not find the Board role to be a conflict of interest for Ms. Padden.

4.1.14  Absent directions to the contrary, she therefore acted in accordance to her duty to DMLF.

COMPLAINT FOR DAMAGES &
JURY DEMAND ~ Page  3 OF 25

THE LAW OFFICE OF
P. BOSMANS
1067 25TH ST. PL. SE
PUYALLUP, WA 98372

PBosmans_Law@Outlook.com

4.1.15  The City did not place limitations on her service to the Board.

4.1.16  At no time in June, 2018, did Ms. Padden take the DMLF documents from the file drawer at the Senior Center from City property.

4.1.17  Ms. Padden did not delete records on the City Server.  .

4.1.18  Ms. Padden did download DMLF files onto a thumb drive and delivered it to DMLF, as she freely admitted to Defendant.

4.1.19  Ms. Padden's job duties for DMLF vis a vis checks was to act as courier only.

4.1.20  In anticipation of her retirement, Ms. Padden prepared a detailed "Succession Plan" and gave a copy to the Chief Operating Officer. Ms. Padden was not hiding her practices from the City or Defendant.

4.1.21  Ms. Padden did not interpret any item of the Succession Plan to be contrary to her job duties.

4.1.22  It was her own succession plan that raised the concerns of the City.

4.1.23  Despite the fact that no part of the plan had been hidden from the City, City officials failed to question Ms. Padden about her entries.

4.1.24  A simple meeting at that point could have elucidated how Ms. Padden believed the City itself intended for DMLF, a separate non-profit could benefit parks, recreation and senior services in the Des Moines community in the most timely and straightforward manner possible.

4.1.25  Ms. Padden at no time believed the funds she helped raise through DMLF were going anywhere but to serve the parks, recreation and senior services of the Des Moines community in the best manner possible as determined the DMLF Board.

COMPLAINT FOR DAMAGES &
JURY DEMAND ~ Page  4 OF 25

4.1.26  Ms. Padden did not believed she denied the City money it was entitled to use for anything except parks, recreation and senior services.

4.1.27  If there was a change in policy concerning the liaison with DMLF that would divert money donated for parks, recreation and senior services to other uses, this policy change was not explained to Ms. Padden.

4.1.28  In late 2017, Ms. Padden opposed Defendant regarding his plan to combine the senior services advisory committee and the human services advisory committee prior to her leaving.

4.1.29  Prior to June 14, but early in 2018, Ms. Padden pushed the Defendant to make appointments for vacancies on the senior services advisory committee and human services advisory committee.

4.1.30  Prior to June 14, 2018, but early in 2018, Ms. Padden attempted to work with HYDE Shuttle and METRO regarding the hours of the Metro shuttle routes for senior citizens, and her attempts were opposed by Defendant.

4.1.31  Prior to June 14, 2018, but early in 2018, Ms. Padden sent out an email to persons interested in filling her position with salary information from Wesley Homes, which was taking over the service, including her position. This action by Ms. Padden angered Defendant.

4.1.32  Prior to June 14, 2018, but early in 2018, Ms. Padden questioned the City Attorney regarding the legality of allowing a contract employee from Wesley Homes with no allegiance to the City, to handle city budgets, city funds, and supervise city employees.

COMPLAINT FOR DAMAGES &
JURY DEMAND ~ Page  5 OF 25

THE LAW OFFICE OF
P. BOSMANS
1067 25TH ST. PL. SE
PUYALLUP, WA 98372
PBOSMANS_LAW@OUTLOOK.COM

4.1.33  Prior to June 14, 2018, but early in 2018, Ms. Padden questioned the City Attorney regarding whether other retirement communities were given the opportunity to express an interest in the senior services contract proposal.

4.1.34  Ms. Padden was called into Defendant's office after he heard about the inquiries set forth in paragraphs 4.1.32 and 4.1.33.

4.2  **Des Moines Legacy Foundation**

4.2.1  The DMLF is a non-profit 501 (c)(3) charity.

4.2.2  At all times relevant to this action, the DMLF was under no contract or legal obligation to the City of Des Moines.

4.2.3  The purpose of the DMLF was to raise money through fundraisers for parks, recreation and senior services in the Des Moines community as set out in its Vision Statement:

> **Vision Statement:** Together, with you, we can build a brighter future through parks, recreation, and senior services in the Des Moines community. (Ex. B)

4.2.4  The Articles of Incorporation for DMLF filed December 30, 1999 (Ex. C), state:

> The corporation is organized exclusively for charitable and educational purposes, including, for such purposes, the making of distributions to organizations that qualify as exempt organizations under Section 501 (c)(3)...and municipal corporations exclusively for public purposes.

Specifically, the objectives of the corporation are as follows:

> i.   To support the Des Moines community and its residents by helping to provide charitable and education funds for the betterment of the community.
> ii.  To sponsor fund raising projects to provide funds to carry out the above purpose.

COMPLAINT FOR DAMAGES &
JURY DEMAND ~ Page  6 OF 25

THE LAW OFFICE OF
P. BOSMANS
1067 25TH ST. PL. SE
PUYALLUP, WA 98372
_____
PBosmans_Law@Outlook.com

    iii.    To receive gifts, endowments, devises and bequests that will be used to carry out the purposes and objectives of this corporation.

    iv.    To carry on any activities necessary to carry out objectives and purposes of this corporation.

4.2.5   The DMLF Vision Statement and Articles of Incorporation do not state that it raises funds solely for the City of Des Moines or its Department of Parks, Recreation and Senior Services, nor has the DMLF raised funds solely for the City of Des Moines.

4.2.6   DMLF possesses no physical offices and hires no employees.

4.2.7   DMLF understood that any DMLF files left at the Senior Center might not be accessible to them once Ms. Padden, the senior center manager, retired.

4.2.8   The DMLF Board engaged in a disagreement with two employees of the City on June 7, 2018, during which time the Board understood the employees to assert that they had a right to join all Board meetings and to inspect all Board documents.

4.2.9   As a result of that disagreement, Board President, Gene Achziger directed Ms. Padden to remove DMLF files from the Senior Center.

4.2.10  The minutes of the June 7, 2018 DMLF Board meeting, with 11 members present including Brian Snure, attorney at law, set out the following:

> Discussion began with the heavy handiness (sic) of the COO [... her title is now Chief Strategy Officers, for the City of Des Moines] to attend our board meeting. She is not the acting PARD [Parks and Recreation Director] yet. It was recommended that we remove the parks and rec director from our bylaws. This does not mean that we cannot have city staff on the foundation. They serve on many local agencies; Rotary, Farmers Market, etc. We need to move *our files*, from city facilities and find a non-city building to meet in...Kim Richmond [Board member] made a motion that we remove the automatic appointment of the senior services manager with the city of Des Moines from our bylaws, section 3.2. The board will elect a

COMPLAINT FOR DAMAGES &
JURY DEMAND ~ Page  7 OF 25

THE LAW OFFICE OF
P. BOSMANS
1067 25TH ST. PL. SE
PUYALLUP, WA 98372

PBOSMANS_Law@OUTLOOK.COM

secretary.  Patricia Clark seconded.  Any city staff on the board will be nominated or appointed by the board, as is any other director. [emphasis added] (Ex. D)

4.2.11   The DMLF Board also removed their supplies which were maintained in a storage unit at the Public Works Service Center.

4.2.12   At all times relevant to this action, DMLF had expressly maintained its position that its records, no matter the location, were not the City' s public records.

4.2.13   This dispute between the parties had not been resolved on or before June 14.

4.2.14   As stated by Brian Snure, on 8/17/18. a DMLF Board member and long-time attorney in Des Moines:

> It is our position that the records currently in our possession are Legacy Foundation Records that are owned by the Legacy Foundation not the City.  It is also our position that the Legacy Foundation Records in our possession are not Public Records of the City. If we were to receive a request for the records, pursuant to the Fortgang Case we would take the position that we are not an agency and our records are not public records. In Fortgang, the nonprofit actually had a contract to manage City employees in the operation of the Zoo. In our case there is even less of a connection with the City and the 4 elements of the Telford test, would, I believe clearly establish that the Legacy Foundation is not an agency under the PRA despite city employee involvement...
> I lay out the above not because we have any desire to argue the finer points of the Public Records Act, or to interfere with the City's access to the records, but to clearly establish as a matter of record, that we consider Legacy Foundation Records to be the property of the Legacy foundation and that such records are not public records. (Ex. E.)

4.3   **City of Des Moines**

4.3.1   The City of Des Moines is audited by the Office of the State Auditor. Prior to June 14, 2018, no issues had been raised with regards to DMLF to the best of Ms. Padden's knowledge.

COMPLAINT FOR DAMAGES &
JURY DEMAND ~ Page  8 OF 25

**THE LAW OFFICE OF
P. BOSMANS**
1067 25TH ST. PL. SE
PUYALLUP, WA 98372

PBosmans_Law@Outlook.com

4.3.2   The City allowed DMLF to use a file drawer at the Senior Center and to use the City computer system.

4.3.3   The practice of allowing DMLF to maintain their files on the City's computer system was an open practice by City employees for 19 years.

4.3.4   At some time in or prior to 2018, the Defendant determined to outsource the management of the Senior Center to Wesley Homes, a private non-profit corporation.

4.3.5   The City and Defendant knew or should have known that by having Ms. Padden appointed to the DMLF Board, they were binding her to the fiduciary role that all Board members by law are required to uphold.

4.3.6   The City initiated an investigation of Ms. Padden based in whole or in part on her own freely given Succession Plan and hired the entity Alvarez and Marsal to conduct the investigation.

4.3.7   The Alvarez investigation did not uncover proof of wrong-doing by Ms. Padden but did find several issues with DMLF.

4.3.8   The primary issues found related to the Memorial Bench Program and the Arts Commission. These two programs were outside Ms. Padden's responsibilities for the City and the Board.

4.3.9   The Defendant and City were well aware at least as early as March 2017, that the DMLF provided charity funding more broadly than merely to the City.  In the letter of Defendant to Gene Achziger, DMLF President, March 14, 2017, Defendant states:

> "As these services are provided by the Sound Generations
> Organization (and not the City), Legacy can work directly with
> Sound Generations regarding the $10,000 donation." (Ex. F)

COMPLAINT FOR DAMAGES &
JURY DEMAND ~ Page  9 OF 25

THE LAW OFFICE OF
P. BOSMANS
1067 25TH ST. PL. SE
PUYALLUP, WA 98372
—————
PBosmans_Law@Outlook.com

4.3.10  The shared computer drive for the Parks and Recreation department is accessible by all PRSS staff.

4.4    **Defendant**

4.4.1   Defendant possessed full authority to revoke the service of Ms. Padden on the DMLF Board as part of her job duties.

4.4.2   At no time in 2018 did Defendant elect to revoke the memorandum requiring Ms. Padden's service on the DMLF Board.

4.4.3   At no time in 2018 did Defendant seek to clarify with Ms. Padden the City's position as to the public nature of the records that the Board deemed its private records.

4.4.4   At no time in 2018 did Defendant adopt policies or procedures for Ms. Padden to follow if a conflict existed between her duty to the City and her fiduciary obligation as a DMLF Board member.

4.4.5   On June 14, 2018, Defendant made a public statement to the City Council that an action had been taken that very day to limit the access of an employee who was *"deleting large numbers of files"* from the City server.  [emphasis added] (Ex. G)

4.4.6   Defendant further stated at the same meeting that "this employee" [whose access had been limited] "has been *suspended* pending the outcome of a further investigation." [emphasis added]

4.4.7   On July 2, 2018, Defendant publicly stated that the "city had obtained an audio recording of the employee *which confirmed that they had deleted* electronic records…." [emphasis added] (Ex. H)

COMPLAINT FOR DAMAGES &
JURY DEMAND ~ Page  10 OF 25

THE LAW OFFICE OF
P. BOSMANS
1067 25TH ST. PL. SE
PUYALLUP, WA 98372

PBOSMANS_LAW@OUTLOOK.COM

4.4.8   The audio file does not confirm that the employee in the audio recording had deleted records. Neither Ms. Padden nor any other employee was suspended for deletion of records on that day. (Ex. I)

4.4.9   To this date, no one has confirmed who deleted the described files. The Defendant stated on July 2, 2018, that the employee who had been confirmed to have deleted files no longer worked for the City. (Ex. H)

4.5   **Ms. Padden Disagreed With Defendant Over His Plan to Contract Out Senior Services to Wesley Homes to Manage the Senior Center and Over Other Decisions**

4.5.1   Three weeks before Ms. Padden's retirement date the Defendant called a meeting with the Parks and Senior Services Department and announced that he was contracting out senior services to Wesley Homes and only Wesley Homes staff could apply.

4.5.2   Beginning in January 2018, Ms. Padden had asked for approval of her Succession Plan for the Senior Center.

4.5.3   Ms. Padden had been contacted by a number of people seeking information about the vacancies on the Senior Services Advisory Committee, and about her soon to be vacant position.

4.5.4   Ms. Padden advised people who had been asking about succession of the Defendant' s decision.

4.5.5    Ms. Padden was uncomfortable that there were no discussions, committee meetings, council agendas or council meeting discussion about the decision until June 5, 2018.

4.5.6   On or about the second week in June 2018, the Defendant met with Ms. Padden.

4.5.7   Defendant acted in an angry manner that Ms. Padden had asked questions regarding the planned management transfer when people sought information. He acted in an

COMPLAINT FOR DAMAGES &
JURY DEMAND ~ Page  11 OF 25

THE LAW OFFICE OF
P. BOSMANS
1067 25TH ST. PL. SE
PUYALLUP, WA 98372

PBosmans_Law@Outlook.com

angry manner that she had questioned the City Attorney about the legality of certain aspects of his proposal.

4.5.8 The Defendant stated that Ms. Padden had "been busy, haven't you?" He told Ms. Padden that if she did not back off and support his plan she would be terminated, or words to that effect.  Ms.Padden understood Defendant's words, in combination with his angry manner, to be a threat.

4.5.9 In her discussions with seniors about the Wesley Homes plan, Ms. Padden tried to be fair and unbiased.

4.5.10 The seniors were angry over the plan.

4.5.11 Signs went up around Wesley Homes and City Hall saying "Wesley Just Wants our Money".

4.5.12 Seniors came to the June 7, 2018, City Council meeting and spoke out against the idea of contracting out senior services.

4.5.13 Defendant believed Ms. Padden was responsible for the seniors' protests.

4.5.14 Prior to the June 7, 2018, board meeting the Defendant asked to speak to the DMLF Board and the Board denied his request.

4.5.15 Ms. Padden was on the Board at that time.

4.5.16 Within 7 days of these events, on June 14, 2018, the Defendant publicly humiliated Ms. Padden, and forced her from the senior center.

4.6  **The Issue of Public Records**

4.6.l.  The Defendant assumed that Ms. Padden deleted public records between June 12 and 13 based on this phone message of June 13, 2018:

COMPLAINT FOR DAMAGES &
JURY DEMAND ~ Page  12 OF 25

Um Dale [Dale Southwick, Information Technology Manager], we got word that the City is planning on coming in here and confiscating everything about the _Des Moines Legacy_ _Foundation_ so I'm boxing like crazy.  Could you delete the scanned folder - _Des Moines Legacy Foundation_ - on our copier please? I don't know how to do that. Or if you're not comfortable with that, could you please call me and tell me how to delete the _Des Moines Legacy Foundation_ scanned folder. [emphasis added] (Ex. I).

4.6.2   Mr. Southwick did not reply to Ms. Padden's message, nor did he delete scanner files.

4.6.3   Ms. Padden did not know how to delete files from the City server.

4.6.4   Ms. Padden did not delete files from the City server.

4.6.5   Ms. Padden did not know a City server password.

4.6.6   Only two information technology employees have access to the City server password.

4.6.7   Ms. Padden did not take or put the records back on the server. (Ex. J)

4.6.8   Ms. Padden did not take City records "in boxes" from the Senior Center. (Ex. H)

4.6.9   Ms. Padden was specific in her phone message request on June 13, 2018, for "DMLF files" and not City files. She said "DMLF files" three times.

4.6.10  The Defendant, in public statements at the time, did not state what "public records" had been deleted but did assert that they were recovered.

4.6.11  In fact, the records were not "recovered"; they were not deleted..

4.6.12  Ms. Padden was at all relevant times fully aware that the City kept back up files.

4.6.13  Ms. Padden had access  to the P drive, along with several other employees.

4.6.14  Ms. Padden did not access the P drive on June 13, 2018 because of her retirement party that day.

4.6.15  Ms. Padden was not the liaison to the Des Moines Art Commission at any relevant

THE LAW OFFICE OF
P. BOSMANS
1067 25TH ST. PL. SE
PUYALLUP, WA 98372
PBosmans_Law@Outlook.com

time.

4.6.16   Ms. Padden was not involved with the Memorial Bench Program.

4.6.17   The Issaquah Police Department expressly found that "it does not appear that Padden

diverted money, for personal gain, from the City or from the DMLF."  (Issaquah

Police Investigation p.19 of 19.)  Nor did she delete documents from the City server.

The Issaquah Report cites Dale Southwick (City IT manager), who stated that

"Padden would not have been able to delete the copier folder without assistance from

IT as the ability to delete items from the copier requires a password only retained by

IT." p. 16 of 19. (Ex. K)

4.7   **Defendant Assumed That it Was Ms. Padden Who Had Deleted Records on June 13, 2018, Called Her In, Presented Her With the Notice of Administrative Leave, and Proceeded to Humiliate Her**

4.7. l.   By letter of June 14, 2018, the Defendant notified Ms. Padden that she was placed

on Administrative Leave:

> "Notice - Internal Investigation Initiated - Administrative Leave" (Ex. I) citing as potential violations: theft, falsification of records, unauthorized possession or use of any City property, equipment or materials, and injury to and misappropriation of records.

4.7.2   The Notice further stated:

> BY THIS MEMORANDUM YOU ARE OFFICIALLY ADVISED THAT AN INTERNAL INVESTIGATION IS ONGOING REGARDING YOUR CONDUCT AND POSSIBLE VIOLATION/S OF THE CITY OF DES MOINES PERSONNEL MANUAL AND STATE LAW. YOU ARE HEREBY PLACED ON ADMINISTRATIVE LEAVE WITH PAY PENDING THE OUTCOME OF THE INVESTIGATION….
>
> ***...During this investigation you will be given the opportunity to explain your actions to the investigator as well as through a separate document to me.*** [emphasis added] (Ex. L)

4.7.3   This Notice was the first indication Ms. Padden had that she was under investigation.

4.7.4   Ms. Padden was not given the opportunity to explain her actions to the investigator.

4.7.5   On June 14, 2018, Defendant, in person, escorted Ms Padden out of the Senior Center and oversaw her departure in the presence of 50-65 seniors at the Seniors Center.

4.7.6   Defendant timed his presence to coincide with the senior's lunch hour, when the Senior Center is fully occupied.

4.7.7   The Defendant rarely entered the Senior Center.

4.7.8   At that time Ms. Padden was allowed to take her personal belonging " boxes" out of her office.

4.7.9   The boxes were examined by Bonnie Wilkins, the then-City Clerk.

4.7.10  No DMLF or City records were found in Ms. Padden's boxes.

4.7.11  These boxes were the only boxes Ms. Padden removed from the City.

4.7.12  The Defendant's personal presence at her forced departure caused Ms. Padden humiliation and embarrassment

4.7.13  Several seniors approached Ms. Padden crying and upset about the actions of the Defendant.

4.7.14  Ms. Padden's keys to the Senior Center were taken and her access to the Senior Center and the City computers were shut down.

4.7.15  John McEvoy, a senior present during the lunch hour, heard the commotion and confronted the Defendant asking why Ms. Padden was told to leave.

THE LAW OFFICE OF
P. BOSMANS
1067 25TH ST. PL. SE
PUYALLUP, WA 98372

PBOSMANS_LAW@OUTLOOK.COM

4.7.16  Defendant cornered Mr. McEvoy and said he did not ask Ms. Padden to pack up her

belongings and leave. After Ms. Padden left, Mr. McEvoy was told by Charisse

Gregory "he did too tell her to get out." Four days later the Defendant again

approached Mr. McEvoy and tried to convince him that he had misunderstood what

had happened at the Senior Center. Mr. McEvoy told the Defendant he "did not

misunderstand what was said" and that the Defendant "had lied" to him.

4.7.17  Mr. McEvoy was so angry about the manner in which Ms. Padden was treated that

he appeared at the Des Moines City Council meeting on June 28, 2018, and

reiterated his comments to the entire City Council that the Defendant had not told

the truth to him when asked.  He also stated that the manner in which the Defendant

acted was shabby and that he would never treat anybody the way Ms. Padden was

treated.

4.7.18  Alan Masterson was also at the Senior Center when the Defendant oversaw Ms.

Padden packing her belongings and leaving the Center. Mr. Masterson asked the

Defendant "what the hell is going on?" The Defendant would not respond.

4.7.19  Mr. Masterson was so angry about the events of the 14th that he also spoke at the

June 28, 2018, Des Moines City Council meeting.

4.7.20  He stated that:

"Sue was dedicated to her work and professional in her manner while
being a kind friend to everyone at the Senior Center. She was very
well thought of and even as she was being publicly fired and
marched out of the Center, while she was upset, she did what she was
told and left with her dignity intact. Mr. Mathias had damaged Sue's
reputation, a reputation that took 22 years to create. *I still do not
understand why the Defendant chose to act the way he did. It was
embarrassing to anyone watching his action.* I can only assume he is

COMPLAINT FOR DAMAGES &
JURY DEMAND ~ Page  16 OF 25

**THE LAW OFFICE OF
P. BOSMANS**
1067 25TH ST. PL. SE
PUYALLUP, WA 98372

PBosmans_Law@Outlook.com

a petty person who likes to pick on others to show again that he "is the boss". He has completely underestimated how upsetting this was to the seniors in the City that day and it is still the talk of the City and the Senior Center." [emphasis added] Declaration of Masterson.

4.7.21  Others at the Senior Center that day expressed being upset *at seeing the City Manager there to oversee Ms. Padden packing up her items and leaving.* [emphasis added]

4.7.22  Seniors noted that Ms. Padden was very upset and extremely embarrassed.

4.7.23  The Defendant had four management level personnel who could have placed Ms. Padden on administrative leave: the Human Resources manager, the Assistant City Manager (Chief Operations Officer), the Department Director for the Parks, Recreations and Senior Services Department and/or the Chief Strategic Officer. He chose to act against Ms. Padden personally and publicly.

4.7.24  Defendant's choice to personally see to her exit takes on added significance when taken together with his statements on June 14, 2018, and July 2, 2018, and later, at Council Meetings.

4.7.25  The Defendant also had several facilities at his disposal to meet with Ms. Padden, including City Hall, where his office is located, the Parks Fieldhouse where the Parks Director is located, the Human Resources Office or any of the many facilities, but he chose to oversee Ms. Padden's departure from the Senior Center. All other employees under investigation were spoken to by Dan Brewer, Assistant City Manager, without others present. Mr. Brewer advised the employees that "someone in this department has committed a felony".  All other employees remained at work

COMPLAINT FOR DAMAGES &
JURY DEMAND ~ Page  17 OF 25

during the course of the administrative review, all other employees were left

believing that the felon was the one employee summarily escorted out, Ms. Padden.

4.7.26  The Defendant made a public statement at a televised Des Moines City Council

meeting on the same day, June 14, 2018, asserting the following violation of the

Public Records Act:

> " Yesterday, it was confirmed that a city employee was acting
> in a way to compromise that investigation, specifically
> deleting large numbers of files from the city's server," said
> Matthias. "These actions put the city at great risk." (Ex. G)

4.7.27  Given Defendant' s earlier unusual presence at the Senior Center, every member

who had been in attendance and every person to whom they had recounted the tale

knew without a doubt to whom Defendant was referring. The Defendant further

stated: "Additionally, the City obtained an audio recording of the employee which

confirmed that they had deleted electronic records." (Ex. H)

4.7.28  The audio recording on its face demonstrates that it did not confirm that anyone had

deleted electronic records.  (Ex. I)

4.7.29  He further stated on July 2, 2018: "they were boxing records related to the

investigation in order to remove them from City buildings." (Ex. H)

4.7.30  Ms. Padden was not aware of "the investigation."

4.7.31  No other employees who were also on the DMLF Board, or authorized by the

former City Manager to assist DMLF were treated in a similar manner.

4.7.32  Ms. Padden was the only employee who was placed on administrative leave.

4.7.33  Only Ms. Padden was forced out of her work-place under the watchful eyes of the

Defendant himself.

THE LAW OFFICE OF
P. BOSMANS
1067 25TH ST. PL. SE
PUYALLUP, WA 98372

PBosmans_Law@Outlook.com

4.7.34  Only one employee was impugned on television at the City Council meetings and through media reports prepared by the City, and because of her disparate treatment, her identity was well known.

4.8     **None of the Investigators Concluded That Ms. Padden Violated Public Records Law or Committed the Crime of Theft**

4.8.1   Four investigators have concluded their work as part of the group looking into the actions of Ms. Padden for the purpose of taking further action against her.

4.8.2   Of the four investigations none have found that she violated the public records act or that she should be charged with theft.

4.8.3   These investigators included:

A) Alvarez & Marsal Valuation Services, L.L.C., (hereinafter "Alvarez Report)
B) King County Prosecutor Fraud Division.
C) Issaquah Police Department
D) Special Prosecutor Lee
E) The State Auditor's Office has also conducted an investigation that has been closed; their investigation has not been posted.

4.8.4   Ms. Padden was not given an opportunity to make a statement to the investigators over the course of the 483 days after the Notice of Administrative Leave was presented to her (until a criminal detective for the Des Moines Police Department invited her to speak in the fall of 2019 during the course of an additional criminal investigation; she declined).

4.8.5   The many investigators the City employed further embarrassed and humiliated Ms. Padden, adding to her physical and emotional distress.

4.8.6   Defendant employed the many investigators in part or completely based upon animus toward Ms. Padden.

COMPLAINT FOR DAMAGES &
JURY DEMAND ~ Page 19 OF 25

THE LAW OFFICE OF
P. BOSMANS
1067 25TH ST. PL. SE
PUYALLUP, WA 98372
—————
PBOSMANS_LAW@OUTLOOK.COM

4.9   **Ms. Padden Denies Any and All Wrongdoing**

4.10   **Ms. Padden Was Injured by Defendant's Humiliating Treatment of Her**

4.11   **Ms. Padden Was Injured by Defendant's Disparate Treatment of Her**

4.12   **Ms. Padden Was Injured by Defendant's Retaliatory Treatment of Her**

4.13   **Ms. Padden's Injuries Were Exacerbated in 2019**

4.13.1   At a televised City Council meeting on October 11, 2019, the City stated that criminal activity did occur vis a vis "the employee" and DMLF, but that there was not enough evidence to meet the standard required in a court of law.

4.13.2   This statement revived the accusations once again against Ms. Padden.

4.13.3   The October 10, 2019, televised Council meeting made use of a Powerpoint entitled "Investigation Update" which stated:

Slide 18:
Findings
Although probable cause exists to believe crimes were committed, evidentiary issues would ***make proving charges "beyond a reasonable doubt" difficult.*** Therefore, the Special Prosecutor has not recommended criminal charges be filed at this time. Based on information currently available, criminal probe is now closed. [emphasis added] (Ex. M)

4.13.4   A Des Moines "News Flash" (Ex. N ) instead stated under the heading "City Announces end of Criminal Probe into Actions of Local Non-Profit, Continues to Seek Restitution," posted October 11, 2019: ... After completing the investigation, the case was referred to a Special Prosecutor to review the matter for criminal charges. *Although **criminal activity did occur,*** the Special Prosecutor found that based on the information available, there was not sufficient evidence to link specific individuals to the crimes beyond a reasonable doubt. (emphasis added) (Ex.L).  (See also Ex. O "Statement Regarding the City of Des Moines Ending its Criminal Investigation of the Des Moines Legacy Foundation.")

**THE LAW OFFICE OF
P. BOSMANS**
1067 25TH ST. PL. SE
PUYALLUP, WA 98372

PBOSMANS_LAW@OUTLOOK.COM

# V.  STATUTORY AUTHORITY

5.1  **RCW 42.56.060.** Disclaimer of public liability.

No public agency, ***public official, public employee, or custodian*** shall be liable, nor shall a cause of action exist, for any loss or damage based upon the release of a public record if the public agency, public official, public employee, or custodian ***acted in good faith in attempting to comply with the provisions of this chapter.*** [emphasis added]

5.2  **RCW 9A.56.020:** Theft - Definition - defense.

1)  "Theft" means:
   (a) To wrongfully obtain or exert unauthorized control over the property or services of another or the value thereof, with intent to deprive him or her of such property or services; or
   (b) By color or aid of deception to obtain control over the property or services of another or the value thereof, with intent to deprive him or her of such property or services; or
   (c) To appropriate lost or misdelivered property or services of another, or the value thereof, with intent to deprive him or her of such property or services.
   
   > *(i)  In any prosecution for theft, it shall be a sufficient defense that: The property or service was appropriated openly and avowedly under a claim of title made in good faith, even though the claim be untenable; or*
   
   > *(ii) The property was merchandise pallets that were received by a pallet recycler or repairer in the ordinary course of its business.*
   
   [emphasis added]

# VI.  CAUSES OF ACTION

6.1  **Preliminary Matters**

6.1.1  This complaint is based on the wrongful actions of Defendant and the City of Des Moines by and through its agents and employees in their actions against Ms. Padden in which they intentionally, recklessly and unreasonably caused Ms. Padden extreme emotion distress and mental anguish, making it appear that the reason for Ms. Padden leaving her office was due to Ms. Padden's felonious criminal

violations, and in their actions intentionally and/or negligently, unreasonably and in retaliation for her protected activities. Ms. Padden reserves the right to assert additional facts and legal theories should discovery reveal they are appropriate.

6.1.2   Ms. Padden realleges each of the preceding paragraphs as though fully set forth in the following causes of action.

6.2   **Intentional and/or Negligent Infliction of Emotional Distress**

6.2.1   The aforesaid acts of defendants and each of them constitute the torts of intentional and/or negligent infliction of emotional distress against Ms. Padden.

6.2.2   The Defendant negligently caused Ms. Padden great emotional stress, which both sickened her and strained her companion partnership.

6.2.3   The investigation by numerous investigators has now been hanging over Ms. Padden's head for **698** days and counting. Every day since she left the City she has suffered emotional and physical distress.

6.3   **Defamation**

6.3.1   The Defendants intentionally and/or recklessly disseminated false and defamatory statements concerning Ms. Padden to the public knowing that they did not have information to support the statements, knowing that the information was unsubstantiated, false, and/or knowing that no proper and complete investigation had been undertaken.

6.3.2   The dissemination of the false and defamatory statements has caused actual harm to Ms. Padden whose professional reputation has been defamed as a proximate and direct result of the defamatory publication.

THE LAW OFFICE OF
P. BOSMANS
1067 25TH ST. PL. SE
PUYALLUP, WA 98372

PBosmans_Law@Outlook.com

6.4     **Violation of the First Amendment**

6.4.1   The Defendant retaliated against Ms. Padden for her outspoken criticism and activism in opposition to the outsourcing of the Senior Center to Wesley Homes by publicly humiliating her and ensuring that numerous people knew she had been placed on leave on suspicion of theft of public records and of money owing to the City.

6.4.2   The Defendant additionally based his retaliation against Ms. Padden on her other statements and activities.

6.4.3   Defendant further pursued Ms. Padden long past the point a reasonable person would have done, in retaliation for her earlier actions.

6.5   **Outrage**

6.5.1   The aforesaid acts of Defendants and each of them constitute the tort of outrage against Ms. Padden.  This conduct is ongoing and includes but is not limited to, the ongoing and baseless threats of criminal prosecution and investigation.

6.5.2   The Defendant's outrageous conduct caused Mr. Padden great emotional distress and stress, which both sickened her and strained her companion partnership.

6.5.3   The investigation by numerous investigators has now been hanging over Ms. Padden's head for 698 days.  Every day since she left the City she has suffered emotional and physical distress.

THE LAW OFFICE OF
P. BOSMANS
1067 25TH ST. PL. SE
PUYALLUP, WA 98372

PBosmans_Law@Outlook.com

6.6     **Retaliation**

6.6.1  The aforesaid acts of Defendants and each of them constitute retaliation against Ms.

Padden through numerous investigation, and her placement on administrative leave,

based on no known facts that she had acted improperly in any manner.

6.7     **Age and Gender Bias**

6.7.1  The aforesaid actions of Defendants and each of them constitute age and gender bias

in violation of State and federal law as will be established at trial based on the past

acts of the Defendant with regards to disparity of treatment based on gender and

age.

6.8     **Hostile Work Environment**

6.8.1  The aforesaid actions of Defendants and each of them constituted a hostile work

environment in violation of State law against Ms. Padden.  This conduct included,

but not limited to, the ongoing and baseless threats of criminal prosecution and

investigation.

6.9     **Federal Civil Rights violations of the United States Constitution 4th and
14<sup>th</sup>Amendments Pursuant to 42 U.S.C. § 1983**

6.9.1   By virtue of the facts set forth above, the defendants are liable for

compensatory and punitive damages for the deprivation of the civil rights

of the Ms. Padden which are guaranteed by the Fourth Amendment to the

United States Constitution and 42 U.S.C. § 1983 to be free  from

unreasonable search of her person.

6.9.2   The Defendant through their agent, violated 42 U.S.C. § 1983 in his

COMPLAINT FOR DAMAGES &
JURY DEMAND ~ Page  24 OF 25

unreasonable treatment of the Plaintiff based on the facts asserted in the

Complaint and any additional facts should they be appropriate.


WHEREFORE, Ms. Padden prays for the following relief, jointly and severally, against the

Defendant and the City:

### **PRAYER FOR RELIEF**

- **Awarding Ms. Padden general and specific damages;**

- **Awarding reasonable attorney's fees and costs as available under law; and**

- **Awarding Ms. Padden any and all applicable interests on the judgment and on attorneys fees.**


Dated this ____ day of _____, 2020.


By:_____*s/ Patricia Bosmans*_____          By:__*s/ Eric T. Krening*_____
PATRICA BOSMANS, WSBA #914            ERIC T. KRENING, WSBA #27533
Attorney for Plaintiff                                Law Office of Eric T. Krening
1607 25th St. Pl. S.E.                                535 Dock St., Ste 108
Puyallup, WA 98372                               Tacoma, WA  98402-4629
Phone: (253) 203-4737                            Phone: (208) 948-9484
Fax: 1-888-235-6120                               Fax: (253) 572-2223
E-Mail: PBosmans_Law@outlook.com          E-mail: kreninglaw@gmail.com

**SUPERIOR COURT OF WASHINGTON**
**COUNTY OF KING**

| | |
|---|---|
| SUSAN PADDEN, a single woman | |
| Plaintiff, | **NO.** |
| vs. | |
| CITY OF DES MOINES,  a Washington Municipal Corporation,  AND MICHAEL MATTHIAS, | **SUMMONS (20 days)** |
| Defendants. | |

TO THE DEFENDANT:

A lawsuit has been started against you in the above entitled court by SUSAN PADDEN, plaintiff. Plaintiff's claim is stated in the written complaint, a copy of which is served upon you with this summons.

In order to defend against this lawsuit, you must respond to the complaint by stating your defense in writing, and by serving a copy upon the person signing this summons within 20 days after the service of this summons, excluding the day of service, or a default judgment may be entered against you without notice. A default judgment is one where plaintiff is entitled to what she or he asks for because you have not responded. If you serve a notice of appearance on the undersigned person, you are entitled to notice before a default judgment may be entered.

Summons ~ Page  1 of 2

THE LAW OFFICE OF
P. BOSMANS
1067 25TH ST. PL. SE
PUYALLUP, WA 98372

PBOSMANS_LAW@OUTLOOK.COM

You may demand that the plaintiff file this lawsuit with the court. If you do so, the demand must be in writing and must be served upon the person signing this summons. Within 14 days after you serve the demand, the plaintiff must file this lawsuit with the court, or the service on you of this summons and complaint will be void.

If you wish to seek the advice of an attorney in this matter, you should do so promptly so that your written response, if any, may be served on time.

This summons is issued pursuant to rule 4 of the Superior Court Civil Rules of the State of Washington.

Dated this _____ day of _____, 2020.

By:_____*s/ Patricia Bosmans*_____
PATRICA BOSMANS, WSBA #914
Attorney for Plaintiff
1607 25th St. Pl. S.E.
Puyallup, WA 98372
Phone: (253) 203-4737
Fax: 1-888-235-6120
E-Mail: PBosmans_Law@outlook.com

By:__*s/ Eric T. Krening*_____
ERIC T. KRENING, WSBA #27533
Law Office of Eric T. Krening
535 Dock St., Ste 108
Tacoma, WA  98402-4629
Phone: (208) 948-9484
Fax: (253) 572-2223
E-mail: kreninglaw@gmail.com

Summons ~ Page  2 of 2